IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER E. YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-702-NJR-DGW |
| ) | |
| FRANK EOVALDI, KEVIN PAGE, C/O C. ) | |
| MCCLURE, C/O GUTREUTER, and C/O B. ) | |
| LIVEINGSTON, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on Exhaustion of Administrative Remedies filed by Defendants Kevin Page and Frank Eovaldi on April 11, 2014 (Doc. 47) be **GRANTED**, and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff, Christopher Young, filed a Complaint on July 18, 2013 alleging claims related to his incarceration at the Menard Correctional Center.  He alleged that Defendants failed to provide adequate medical care, inhumane conditions of confinement, excessive force, retaliation, and due process violations in relation to an event that occurred on March 24, 2012.  Pursuant to a

screening Order (Doc. 71) on the Third Amended Complaint, he is proceeding on the following claims:

> Count 1: Excessive force by Defendant Sgt. Eovaldi, C/O C. McClure, C/O Gutreuter, and C/O B. Liveingston, related to an assault on March 24, 2012.
>
> Count 2: Failure to Protect against Lt. Page for failing to intervene in the March 24, 2012 assault.

Defendants Eovaldi and Page (the only Defendants who have been served in this matter) have filed a Motion for Summary Judgment arguing that Plaintiff failed to exhaust his administrative remedies (Doc. 47). Plaintiff filed a response on July 18, 2013 (Doc. 62). In his response, Plaintiff does not address Defendants' arguments but only indicates that he requires additional discovery. In reply, Defendants indicate that some of the discovery Plaintiff seeks is on the merits. They also indicate that they responded to discovery requests regarding exhaustion on July 22, 2014 (Doc. 63). Plaintiff also submitted a number of documents that include letters and a grievance dated May 9, 2012 (Doc. 64, p. 2). A hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was held on August 1, 2014 in which Defendants appeared by counsel and Plaintiff appeared in person by videoconference.

A "Grievance Log" and records maintained by the Administrative Review Board ("ARB") (Docs. 48-2 and 48-5) reveal that Plaintiff filed a number of grievances before and after the incident in question. This includes an emergency grievance dated May 27, 2012 in which Plaintiff complained of exacerbation of his medical conditions due to prison conditions (Doc. 48-3, p. 4). The grievance also discusses disciplinary tickets that Plaintiff received on March 16, 2012 and March 24, 2012: Plaintiff complains that the hearings were unfair ("I was unfairly found guilty"), that the hearing committee did not take into account Plaintiff's medical condition

at the time, and that the punishment was excessive (*Id.* at 5). For relief, Plaintiff sought return of privileges and release from segregation (*Id.* at 4). There is no mention in the grievance of any Defendant in this matter or any complaint of excessive force or assault. No other grievance maintained in the records of the ARB or the prison is related to the claims made in this lawsuit.

Prior to and at the hearing, Plaintiff presented various documents that purport to show that he exhausted his administrative remedies. The first is a grievance dated May 9, 2012 in which Plaintiff specifically complained of being assaulted by Defendant Eovaldi and four other correctional officers, that another officer stood by and watched, that he was given a false disciplinary ticket, and that his injuries were untreated (Doc. 64, p. 2). The grievance is marked as an emergency but does not contain a response from either the warden or the counselor (*Id.*). At the hearing, Plaintiff indicated that this grievance in the record is a "carbon copy" of the actual grievance that he wrote on May 9, 2012 and that he submitted it for consideration on that date. In addition to this grievance, Plaintiff presents a letter written by the John Howard Association and dated July 5, 2013 that discusses how the grievance procedure is "seriously flawed." (*Id.* at 3); letters that Plaintiff wrote to Governor Pat Quinn and the ARB (*Id.* at 4-5); an undated letter that is not addressed (*Id.* at 6); a response from a grievance officer related to the March 27, 2012 grievance (*Id.* at 7); an affidavit signed by Plaintiff on August 1, 2014 indicating that he filed grievances by placing them in the cell door or cell bars (*Id.* at 8); and, a letter from the ARB regarding a grievance received on March 7, 2012 (*Id.* at 9). None of these documents, except the May 9, 2012 grievance and the August 1, 2014 affidavit, have any relevance to the matters before the Court.

Plaintiff represented at the hearing that he is very familiar with the grievance process and

how to submit and appeal grievances. Plaintiff argued that the May 9th grievance, to which he asserts he did not receive a response, was sufficient to exhaust the claims that are before this Court. However, the grievance was written on a form that was not in existence until August, 2012. In the bottom corner of the document is a notation "DOC 0046 (8/2012)." This Court takes judicial notice that the notation refers to the date that the version of the form was created. Plaintiff admitted at the hearing that the document presented to the Court was a "carbon copy" of the grievance he filled out on May 9, 2012. Given the date that the form was created, it is impossible for Plaintiff to have submitted the grievance on May 9, 2012 on that grievance form. This Court finds that Plaintiff is not credible in his assertion that he submitted this grievance to prison authorities for consideration. This Court also does not credit Plaintiff's testimony that he submitted other grievances related to the incidents complained of in the Third Amended Complaint to which he received no response. Rather, this Court finds that, in order to refute Defendants' assertion that he did not file a grievance regarding his claims, Plaintiff has fabricated the May 9, 2012 grievance and other alleged grievances[1] that he argues were lost by prison authorities.

---

[1] This Court also finds that Plaintiff has fabricated the undated and unaddressed letter submitted on July 24, 2014 (Doc. 64, p. 6). This letter purports to inquire about grievances filed on March 30, 2012 and April 3, 2012 related to the assault on March 24, 2012. Unlike the other letters presented by Plaintiff, this letter is not dated and it is not addressed to anyone. Moreover, the letter contradicts Plaintiff's assertion at the hearing that he submitted additional grievances on June 6, 2012 and another one 60 to 90 days thereafter.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit.

*Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §

504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

Plaintiff did not file a grievance related to the claims that he is pursuing in this lawsuit.

The May 27, 2012 grievance does not name any Defendant herein nor does it address any of the claims made in this lawsuit. This Court further concludes that the purported May 9, 2012 grievance was not created until after August 2012 and was not submitted to prison authorities for consideration. By failing to grieve the matter at the prison, Plaintiff did not give the prison a fair opportunity to address his concerns prior to filing this lawsuit. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

At the hearing and in his submissions, Plaintiff argues that the grievance process at Menard CC is broken. While the Court acknowledges that there are flaws in the IDOC's grievance procedure, in that grievances are either lost or not responded to in a timely manner, the grievance process was available to this Plaintiff. The record reveals that Plaintiff is not only familiar with the grievance process but that he has successfully had his claims addressed by the ARB. Thus, Plaintiff was fully aware of what steps to take to grieve his complaints and he has the wherewithal to appeal those claims at the appropriate times and to the appropriate entities. Plaintiff also is savvy enough to file timely grievances concerning issues related to the conditions of confinement. And, this Court finds that Plaintiff merely filled out a grievance form and submitted it to this Court *even though he had not filled out a grievance or submitted one to the prison after the alleged March 24, 2012 excessive force and failure to protect*. By presenting the Court with a manufactured grievance, Plaintiff has revealed that he is aware that the failure to submit a grievance prior to filing this lawsuit is fatal to his claims before this Court.

**RECOMMENDATIONS**

For the foregoing reasons, this Court **RECOMMENDS** that the Motion for Summary Judgment on Exhaustion of Administrative Remedies filed by Defendants Kevin Page and Frank Eovaldi on April 11, 2014 (Doc. 47) be **GRANTED**, that the claims against Defendants Page and Eovaldi be **DISMISSED WITHOUT PREJUDICE**, and that the Court adopt the foregoing findings of fact and conclusions of law.

In light of these recommendations, the claim that remains is Count 1, an excessive force claim against Defendants McClure, Gutreuter, and Livingston for an assault that occurred on March 24, 2012.[2]

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: September 2, 2014**

                                           **DONALD G. WILKERSON**
                                           **United States Magistrate Judge**

---

[2] The claim against these Defendants will be the subject of a separate Report and Recommendation.